1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES CHILDERS d/b/a ARTEMIS
SOLUTIONS GROUP,

            Plaintiff,

        v.

SAGEM MORPHO, INC. d/b/a E-
SOFTWARE SES d/b/a XELIOS,

            Defendant.

CASE NO.  C06-0060RSM

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

## I.  INTRODUCTION

This matter comes before the Court on defendant Sagem Morpho Inc.'s ("SMI") Motion

for Summary Judgment.[1]  (Dkt. #31).  Defendant argues that plaintiff cannot pursue his Lanham

Act claims because he has failed to present admissible evidence demonstrating that it infringed

plaintiff's BioCert trademark directly or vicariously, or that it otherwise contributed to the

alleged infringement.  Alternatively, defendant argues that plaintiff has failed to allege facts

supporting an award of monetary damages.  Finally, defendant argues that plaintiff has failed to

present evidence demonstrating that defendant maliciously, deliberately or willfully in

committing the alleged infringement, and, therefore, this cannot be an "exceptional case" under

---

[1] The Court notes that it previously dismissed defendant Sagem Defense Securite for lack of
personal jurisdiction, and there is no evidence that defendant E-Software SAS has ever been served with
the Complaint in this action.

ORDER
PAGE - 1

1    15 U.S.C. §1117 that would allow plaintiff to recover attorney fees.

2         Plaintiff argues that the evidence clearly establishes that the X-BioCert and the BioCert

3    names are sufficiently similar as to justify a claim of customer confusion.  Plaintiff further argues

4    that the evidence presented shows that there is a genuine issue of material fact as to whether the

5    two names are sufficiently similar to warrant liability under the Lanham Act.  Plaintiff also

6    argues that defendant used the X-BioCert product in commerce by offering the X-BioCert

7    product for sale to his employee.  Finally, plaintiff argues that he has presented sufficient facts to

8    support his claim that defendant acted intentionally, maliciously and willfully in infringing his

9    BioCert trademark.  Plaintiff also argues that there remains the possibility of equitable injunctive

10   relief and therefore any partial summary judgment concerning attorney fees is inappropriate at

11   this time.

12        For the reasons set forth below, the Court disagrees with plaintiff and GRANTS

13   defendant's motion for summary judgment.

14                              **II. DISCUSSION**

15        **A. Background**

16        This action arises from the alleged infringement by defendant on plaintiff's trademark

17   through the use of the mark X-BioCert on a brochure that may be downloaded from the website

18   www.xelios.com, as well as the use of the mark on the website itself.

19        Plaintiff James Childers owns and operates a sole proprietorship by the name of Artemis

20   Solutions Group located in Freeland, Washington.  Plaintiff is the owner of the trademark

21   BioCert, United States Trademark Registration No. 2,817,357.  Plaintiff's BioCert products are

22   used in connection with computer software and hardware to allow users to authenticate identity

23   through a biometric interface.  Plaintiff has used the BioCert mark in the production and sale of

24   his products since 2002.  Plaintiff's BioCert mark is used in at least six different products related

25   to fingerprint scanning security for computer products.  Plaintiff also licences the use of the

26

ORDER
PAGE - 2

1    BioCert mark to Intelligent Biometric Solutions, LTD ("IBS"), a registered Hong Kong SAR

2    company, in which plaintiff owns a forty percent interest and has one half of the voting rights.

3        Defendant SMI is located in Tacoma, Washington.  It sells security products that

4    incorporate biometric technology.  SMI's sister company E-Software SAS is organized under

5    the laws of France, and also does business under the trade name Xelios.  E-Software SAS's

6    principle place of business is in Paris, France.  Former defendant SDS is the parent company of

7    both SMI and E-Software SAS.  SDS's principle place of business is in Paris, France.  SDS also

8    claims the trademark on E-Software's trade name Xelios.

9        Beginning in February of 2004, plaintiff had several meetings and email interactions with

10   Christian Moussier, director of Smartgem, a Hong Kong software company.  Plaintiff believes

11   that Mr. Moussier is employed as a biometric development and sales representative by both SDS

12   and SMI.[2]  Plaintiff asserts that these meetings were focused on negotiating sales of SDS and

13   SMI products through IBS's office, sales agents and global distribution network.  Mr. Moussier,

14   on behalf of Smartgem, and plaintiff executed a non-disclosure agreement to protect any

15   intellectual properties of both companies.  There is no evidence that a sales agreement was ever

16   reached.

17       In June of 2005, E-Software SAS began marketing a suite of products, under the Xelios

18   trademark, called PC Login Pro Suite 5 ("PC Login").  This product uses a biometric program

19   by the name of "X-BioCert."  Plaintiff asserts that the X-BioCert name is confusingly similar to

20   his BioCert trademark and will cause consumer confusion between the products as well as allow

21   E-Software SAS to unlawfully trade upon the goodwill and reputation generated by plaintiff's

22   BioCert trademark.

23       Plaintiff perfected service on defendant on January 13, 2006.  Defendant filed its Answer

24   on February 6, 2006.  Plaintiff then moved to extend the deadline to add parties in the action,

25   _____

26       [2] Defendant denies that Mr. Moussier is employed by its company.

ORDER
PAGE - 3

1   and to amend his Complaint to name SDS and E-Software SAS as defendants.  The Court

2   granted plaintiff's motion, and plaintiff filed an Amended Complaint.  Defendant answered the

3   Amended Complaint on May 12, 2006.  SDS filed a Notice of Appearance on Oct 12, 2006.

4   The Court subsequently dismissed SDS for lack of personal jurisdiction, but retained plaintiff's

5   Lanham Act and related state law claims against SMI.  The instant motion followed.

6   **B.  Motion to Strike**

7          As a threshold matter, the Court addresses defendant's motion to strike.  Defendant has

8   asked the Court to strike the declaration of Ms. Celeste Grannum because plaintiff failed to

9   comply with the requirements of Fed. R. Civ. P. 26(a)(1)(A) and (e) by failing to disclose Ms.

10  Grannum as a potential witness.  Under Fed. R. Civ. P. 37(c), failure to comply with the

11  disclosure requirements will result in the exclusion of that evidence in motions or at trial unless

12  the failing party shows that there was substantial justification for the failure or that the failure

13  was harmless.  Fed. R. Civ. P. 37(c); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d

14  1001, 1106 (9th Cir. 2001).  Here, because the motion was raised in defendants' reply brief,

15  plaintiff has not had the opportunity to demonstrate either substantial justification or that the

16  failure was harmless.  However, even if the Court considered Ms. Grannum's declaration, the

17  Court finds that plaintiff cannot defeat summary judgment in this action.  Therefore, the Court

18  denies defendant's motion to strike as moot.

19  **C.  Summary Judgment Standard**

20         Summary judgment is proper where "the pleadings, depositions, answers to

21  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

22  genuine issue as to any material fact and that the moving party is entitled to judgment as a

23  matter of law."  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247

24  (1986).  The Court must draw all reasonable inferences in favor of the non-moving party.  *See*

25  *F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,*

26

512 U.S. 79 (1994). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257. Mere disagreement, or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment. *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. Material facts are those which might affect the outcome of the suit under governing law. *See id.* In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747). Furthermore, conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345 (9th Cir. 1995). Similarly, hearsay evidence may not be considered in deciding whether material facts are at issue in summary judgment motions. *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 345 (9th Cir. 1995); *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F. 2d 665, 667 (9th Cir. 1980).

**D. Lanham Act**

Plaintiff alleges that defendant is liable for infringement of his BioCert trademark under two sections of the Lanham Act – 15 U.S.C. §1114(1)(a) and 15 U.S.C. §1125(a)(1). In order to prevail on his claims, plaintiff must show that defendant "used" his trademark "in commerce" and that the use was likely to confuse customers as to the source of the product.[3] *Karl Storz*

---

[3] Section 1114 provides in part that: (1) Any person who shall, without the consent of the registrant – (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided.

ORDER
PAGE - 5

1    *Endoscopy-Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 853 (9th Cir. 2002).  "'Likelihood

2    of confusion' is the basic test for . . . trademark infringement."  *Dr. Seuss Enters., L.P. v.*

3    *Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir. 1997).  It exists "whenever consumers

4    are likely to assume that a mark is associated with another source" because of similarities

5    between two marks.  *Acad. of Motion Picture Arts & Sciences v. Creative House Promotions,*

6    *Inc.*, 944 F.2d 1446, 1456 (9th Cir. 1991).  Under this standard, the Court must first determine

7    whether defendant used plaintiff's trademark "in commerce."

8         Under 15 U.S.C. § 1127, a mark is used "in commerce" when the mark has been placed

9    on the goods or their containers, labels or the documents associated with the goods or their sale,

10   and the goods are "sold or transported in commerce."  15 U.S.C. § 1127.  The "or transported"

11   language of 15 U.S.C. § 1127 makes it clear that a "use in commerce" under the Lanham Act is

12   not limited to sales.  For example, the sending of a product from Los Angeles to New York with

13   its label attached so that its trademark could be registered has been considered transportation in

14   commerce.  *See Drop Dead Co. v. S.C. Johnson & Son, Inc.*, 326 F.2d 87, 93 (9th Cir. 1963).

15   However, "use in commerce" appears to contemplate a trading upon the goodwill of or

16   association with the trademark holder.  *See id.* at 90.

17        Here, plaintiff has alleged that defendant's sales representative, Bob Rose, had

18   knowledge of PC Login and directed one of plaintiff's employees, Ms. Grannum, to look on the

19   Xelios website to obtain more information about it.  Plaintiff admits that Ms. Grannum initiated

20   that phone call at his insistence.  Plaintiff also admits that Mr. Rose informed Ms. Grannum that

21

_____

22       Section 1125(a)(1) provides: Any person who, on or in connection with any goods or services, or
     any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination

23   thereof, or any false designation of origin, false or misleading description of fact, or false or misleading
     representation of fact, which – (A) is likely to cause confusion, or to cause mistake, or to deceive as to

24   the affiliation, connection, or association of such person with another person, or as to the origin,
     sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .

25   shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by
     such act.

26

ORDER
PAGE - 6

PC Login is not available for sale in the United States.  Despite these admissions, plaintiff argues that defendant, through Mr. Rose, intended that Ms. Grannum would check back at a later date to see if the product would then be available.  Presumably, she would then be able to purchase the product.  However, these actions alone do not violate the Lanham Act.  There is no dispute that defendant did not offer to sell, or actually sell, PC Login to Ms. Grannum or anyone else in the United States.  Nor did defendant distribute or advertise PC Login to Ms. Grannum or to anyone else in the United States.  Indeed, Mr. Rose specifically told Ms. Grannum that PC Login was not available at this time in the United States.

While Mr. Rose may have directed Ms. Grannum to the Xelios website and to check back later regarding the product status in the United States, there is no evidence that when Ms. Grannum called back defendant would actually have the product, that defendant was expecting to have the product or that defendant was simply temporarily out of the product.  In addition, there is no evidence that upon PC Login's release in the United States, defendant would sell it.  At the most, plaintiff has presented speculative testimony about the possible future actions of defendant.  However, such speculation is insufficient to raise a genuine issue of fact to defeat summary judgment.  *Anheuser-Busch*, 60 F.3d at 345.  Moreover, any future intent by defendant to eventually use a product in commerce is insufficient to show a violation of the Lanham Act.  *See Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619, 626 (6th Cir. 1996) (stating that actual use of a protected trademark is a prerequisite to the finding of a Lanham Act violation).

Plaintiff relies on *Levi Strauss & Co. v. Shilon* in support of his argument that defendant's actions establish a direct violation of the Lanham Act.  121 F.3d 1309 (9th Cir. 1997).  However, in that case, the defendant admitted that it had offered for sale counterfeit Levi products.  *Id.* at 1311.  The issue before the court was whether the single incident of offering for sale, without a subsequent completed sales transaction, was enough to hold the defendant liable for violating the Lanham Act.  *Id.* at 1312.  The court held that it was.  *Id.*

ORDER
PAGE - 7

*Levi Strauss* is easily distinguishable from the facts in this case.  Here, plaintiff has produced no evidence that defendant actually made an offer to sell the PC Login product.  In fact, the only reason defendant's sales department even discussed PC Login was because plaintiff instructed his employee to inquire into the product's availability in the United States. Even when pressed about the product and presented with an opportunity to complete a sale, Mr. Rose clearly articulated that PC Login was unavailable for sale anywhere in the United States. Unlike *Levi Strauss*, this is not a case in which the product was available and a sale was clearly possible.

Finally, plaintiff relies upon the actions of Mr. Moussier and his alleged relationship with defendant to establish a violation of the Lanham Act.  However, plaintiff has failed to present any facts demonstrating that Mr. Moussier worked for, or represented, defendant in any capacity.  Plaintiff simply rests upon his bare allegations that Mr. Moussier was defendant's employee.  Such conclusory testimony and bare allegations are insufficient to raise a genuine issue of fact to defeat summary judgment.  *Anheuser-Busch*, 60 F.3d at 345.  Without any evidence of an agency relationship between defendant and Mr. Moussier, the Court will not consider, or attribute to defendant, any of Mr. Moussier's alleged actions.

Accordingly, because plaintiff has failed to raise a genuine issue of material fact with respect to the threshold element that defendant used the allegedly infringing trademark "in commerce," defendant's motion for summary judgment will be granted with respect to plaintiff's Lanham Act claims.

### E.  State Law Claims

Defendant next argues that because plaintiff's Lanham Act claims fail as a matter of law, so too must his state law claims.  Plaintiff alleges two state law claims: (1) unfair business practices in violation of RCW 19.86.010, *et. seq.*; and (2) unfair competition under Washington common law.

ORDER
PAGE - 8

With respect to plaintiff's unfair business practices claim, plaintiff does not identify any specific section of Washington's comprehensive consumer protection legislation that defendant has allegedly violated.  However, the Washington legislature has made clear its intent with respect to such claims:

> The legislature hereby declares that the purpose of this act is to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition. It is the intent of the legislature that, in construing this act, the courts be guided by final decisions of the federal courts and final orders of the federal trade commission interpreting the various federal statutes dealing with the same or similar matters and that in deciding whether conduct restrains or monopolizes trade or commerce or may substantially lessen competition, determination of the relevant market or effective area of competition shall not be limited by the boundaries of the state of Washington. To this end this act shall be liberally construed that its beneficial purposes may be served.

RCW 19.86.920.  Further, the Washington State Supreme Court has stated that ordinary resolution of supplementary state law claims brought under this section should be resolved in the same manner as the federal claims unless there is a clear independent state legal ground.  *See generally Blewett v. Abbott Laboratories*, 86 Wash. App. 782 (1997) and *Boeing Co. v. Sierracin Corp.*, 108 Wash. 2d 38 (1987).

In this case, plaintiff relies upon the same facts to support this claim as he did to support his Lanham Act claims.  Moreover, he has not asserted any unique state law legal ground to distinguish the unfair business practices claim from his Lanham Act claim.  Accordingly, the Court finds that plaintiff has raised no genuine issue of material fact with respect to this claim, and will grant defendant's motion for summary judgment.

Likewise, the Court finds summary judgment in favor of defendant appropriate on plaintiff's unfair competition claim.  In Washington, common law unfair business competition claims are limited to what was referred to in England as claims for "passing off."  *Ivan's Tire Service Store, Inc. v. Goodyear Tire & Rubber Co.*, 10 Wash App. 110, 122 (1973)(citing *Goodyear's India Rubber Glove Mfg. Co. v. Goodyear Rubber Co.*, 128 U.S. 598 (1888)).

ORDER
PAGE - 9

This common law concept has been described to encompass actions by a defendant that result in "lost profits, losses due to reduction in prices occasioned by the competition, harm to reputation, and expenditures reasonably made by the plaintiff to prevent prospective customers from being misled by the defendant's conduct." *Seaboard Sur. Co. v. Ralph Williams' Northwest Chrysler Plymouth, Inc.*, 81 Wash 2d 740, 743 (1973)(citing RESTATEMENT OF TORTS, §746 (1938)).  Here, plaintiff has failed to produce any evidence that defendant's actions caused any of these harms.  In fact, plaintiff admits that he is not aware of any actual damages that have resulted from the alleged infringement of his BioCert mark.  (Dkt. #33, Ex. A at 12-14).  Thus, the Court finds that plaintiff has failed to raise a genuine issue of material fact with respect to any damages that he may have suffered, and the Court grants judgment in favor of defendant on this claim.

### III. CONCLUSION

Having reviewed defendant's motion for summary judgment, plaintiff's opposition, defendant's reply, the declarations and evidence in support of those briefs, and the remainder of the record, the Court hereby ORDERS:

(1)  Defendant's Motion for Summary Judgment (Dkt. #31) is GRANTED, and this case is DISMISSED.

(2)  The Clerk shall forward a copy of this Order to all counsel of record.

DATED this 15th day of December, 2006.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 10